IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AUTUMN MARTINI                  :        CIVIL ACTION
                                :
          v.                    :
                                :
JOB SHERPA, LLC, et al.         :        NO. 18-4805


MEMORANDUM

Bartle, J.                                      May 10, 2022

          Plaintiff Autumn Martini brings this action under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e
et seq., and the Pennsylvania Human Relations Act ("PHRA"),
43 Pa. Cons. Stat. §§ 951 et seq., against her former employer,
Job Sherpa LLC and Job Sherpa LLC doing business as DMVG
Staffing, for lost wages, emotional distress damages, and
punitive damages.[1]  Specifically, plaintiff alleges that she was
subjected to discriminatory comments on the basis of sex as a
pregnant person and was repeatedly harassed by her supervisor,
Scott Shuster.

          Plaintiff filed suit on November 6, 2018 and effected
service of the summons and complaint on Job Sherpa on January
24, 2019.  Job Sherpa failed to enter an appearance or answer
the complaint.  The Clerk of Court entered default against Job

_____

1.   Plaintiff also brought suit against defendant Scott Shuster
who was never served.  The court thereafter dismissed Shuster
from the case for lack of prosecution.

Sherpa on March 26, 2019.  The court thereafter entered judgment as to liability in favor of plaintiff and against defendant Job Sherpa on April 5, 2022.

Before the court is the motion of plaintiff for entry of default judgment with respect to damages pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  The court held a hearing at which plaintiff testified.  The court now makes the following findings of fact and conclusions of law.

I

Plaintiff began working at Job Sherpa in July 2016 as a part-time job recruiter.  Job Sherpa recruits and finds for employers staffing such as seasonal farm workers, accountants, and warehouse workers.  In September 2016 she became full-time at Job Sherpa.  As part of her offer-of-employment letter, plaintiff received an employee handbook from Scott Shuster, her supervisor and one of three owners of defendant.  The handbook includes an anti-harassment policy which prohibits "unwelcome conduct that is based on" sex and gender.  The policy applies to employees, supervisors, and managers of Job Sherpa.  The handbook also states that Job Sherpa is an equal opportunity employer.  Job Sherpa does not have a human resources department.

Plaintiff's starting salary began at $673.07 per week, for an annual amount of $35,000.  There were also opportunities

to increase her salary with commissions.  Her salary later increased in 2017 to $770 a week, or $40,040 a year.

In the fall of 2016, plaintiff found out during an ultrasound that she was eight weeks pregnant with an anticipated due date of June 11, 2017.  She was nervous to tell Shuster for fear of how he would react and treat her once he knew she was going to have a child.  In January 2017 she informed Shuster, and, as expected, he reacted negatively.  He commented that she would have "pregnancy brain" and would not be as fun now.

Plaintiff inquired about the possibility of obtaining health insurance through her work, but Shuster told her to obtain Medicaid.  He caused her fear and anxiety at work by regularly making demeaning and discriminatory comments about her pregnancy status.  For instance, Shuster told her she was getting more stupid because she was pregnant.  She felt as if she were walking on eggshells with her work because of the ways he would criticize her.  He told her she was just making excuses because she was pregnant.  He called her cell phone in the evenings outside of work hours to harangue her about her work and started demanding that she work late in the evenings and come in on weekends.

She described this time at work as "horrible."  Shuster made her pregnancy continuously stressful due to his behavior toward her.  After telling Shuster that she was

3

pregnant, she was always scared and anxious at work with a poor mindset about herself and her performance.  She described the job as a "nightmare job" and a time that she wished she could erase.

Plaintiff spoke to her doctors about the stress she was experiencing at work and sought out a therapist.  Shuster had told her she should get medication to fix herself.  This made her feel worse.  Her doctors confirmed that medication would be entirely inappropriate for her.

As a result of this stress at work, she had a panic attack on March 22, 2017 when she was about seven months pregnant and went to the hospital for which she had to miss work.  She informed Shuster via text message.  He demanded that she come in to "fix her mess" after she missed work because of her hospital visit.  Due to the strain she was experiencing and on her doctor's recommendation, plaintiff asked Shuster if she could work forty hours a week rather than working overtime as she had been doing.  He refused.  While she was at a doctor's appointment, he texted her and said that if she did not return to work then she would be deemed to have resigned her position.

On March 28, 2017, she received a notice of termination letter from Shuster on company letterhead.  The letter states that it was "written notice to you of your termination of employment with the Company, effective

4

immediately."  The letter gave as its reason "job abandonment" after she failed to report to work for three consecutive days without notice.  The letter was not truthful in asserting that she had abandoned her job.  The letter was further evidence of discrimination.

After she was terminated, plaintiff immediately applied for unemployment compensation and began receiving payments on April 8, 2017.  Job Sherpa challenged her unemployment compensation application claiming that she had voluntarily resigned.  A hearing occurred before the Unemployment Compensation Board of Review on July 3, 2017.  The unemployment referee found that plaintiff had not voluntarily abandoned her job and that she was entitled to continue to receive benefits.

She received $374 a week in unemployment from April 8, 2017 through August 26, 2017.  During this time she was continuously searching for a new job after her daughter was born on May 30, 2017.  She eventually started at Avalon Flooring on November 20, 2017 as an administrative assistant.  She made $15 an hour, which is less than she made at Job Sherpa.  In June 2018, plaintiff found a new position that paid more than Job Sherpa.  She now seeks the differential in pay between what she made at Job Sherpa and what she received in unemployment benefits and at Avalon Flooring.  She also seeks compensatory

5

damages for the emotional distress she endured and punitive
damages for Shuster's behavior.

                                    II

          Title VII prohibits discrimination by an employer on
the basis of sex.  See 42 U.S.C. § 2000e-2(a).  This includes
discrimination on the basis of pregnancy.  See 42 U.S.C.
§ 2000e(k); Young v. United Parcel Serv., Inc., 575 U.S. 206,
210 (2015).  Compensatory and punitive damages are allowed for
claims of intentional discrimination under Title VII.  See
42 U.S.C. § 1981a(a)(1).  Accrual of back pay is also permitted
under Title VII.  See 42 U.S.C. § 2000e-5(g).  It is similarly
unlawful under the PHRA for an employer to discriminate against
an individual on the basis of sex.  See 43 Pa. Cons. Stat.
§ 955(a).  Back pay, compensatory damages, and punitive damages
are all available under the PHRA.  See 43 Pa. Cons. Stat.
§ 962(c); Clarke v. Whitney, 975 F. Supp. 754, 758 (E.D. Pa.
1997).

          By failing to answer or appear, Job Sherpa has
conceded plaintiff's allegations in her complaint and the
discrimination she experienced from Shuster on the basis of sex
in violation of Title VII and the PHRA.

          The court therefore turns to the issue of damages.
Plaintiff seeks the difference between what she was making at
Job Sherpa, that is $770 a week, and what she received in

                                     6

unemployment benefits and at Avalon Flooring.  That difference is $7,920 for the period of April 2017 through August 2017 while she was receiving unemployment benefits at a rate of $374 a week.  Plaintiff also seeks $9,463 in lost wages for the period of August 2017 through November 2017 when she obtained a job with Avalon Flooring.  Finally, plaintiff seeks the pay differential from when she started her job at Avalon Flooring up to her start at a new job in June 2018 which paid more than her job at Job Sherpa.  For this period she lost $4,688.60. Plaintiff is entitled to back pay in the amount of $22,071.60.

Plaintiff also seeks this same amount in compensatory damages for the emotional distress she endured while working at Job Sherpa and subjected to Shuster's harassment and discriminatory comments based on her pregnancy.  This court finds that plaintiff is entitled to $22,071.60 in compensation for the emotional distress she experienced while working for Job Sherpa.

Finally, plaintiff seeks punitive damages for Shuster's discriminatory conduct.  Punitive damages are permitted under Title VII "if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  See § 1981a(b)(1).  An employer's misconduct need not be

7

"egregious," rather it must involve "malice" or "reckless indifference," that is "knowledge that it may be acting in violation of federal law."  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999).

Agency principles limit vicarious liability for punitive damages against an employer for an employee's conduct. Id. at 539.  A principal may be liable for punitive damages if "'the agent was employed in a managerial capacity and was acting in the scope of employment.'"  Id. at 542-43 (citing Restatement (Second) of Agency § 217(C)).  An employee acts within the scope of his employment when he performs work of the kind he is employed to perform within authorized limits.  Id. at 543. However, where discriminatory employment decisions are "contrary to the employer's 'good-faith efforts to comply with Title VII'" the employer may not be held vicariously liable.  Id. at 545-46.

Plaintiff has sufficiently demonstrated through her testimony that Shuster's conduct was done with malice and with reckless indifference to her federally protected rights.  See § 1981a(b)(1).  He repeatedly made comments about her pregnancy status at work and criticized her ability to do her job because she was pregnant.  He harassed her for her work and demanded she work extra hours while pregnant.  He did not heed the advice of her doctors that she work a regular forty-hour work week and to reduce stress.  The court finds plaintiff credible and her

testimony credible that she endured significant amounts of stress and anxiety at work because of Shuster's actions towards her due to her pregnancy.  His comments and actions reflect malicious intent and also reflect a reckless indifference to her right to be free from discrimination while at work.  This right is recognized in the employee handbook that he personally gave to plaintiff when she started her employment with Job Sherpa.

There is no question that Job Sherpa can be held vicariously liable for Shuster's discriminatory conduct in this action.  As her supervisor and as a part owner, Shuster was employed in a managerial capacity.  His comments and actions toward her were about her work and as her boss related to her work.  He was therefore acting within the scope of his employment.

There is nothing to indicate that Job Sherpa made any good faith efforts to comply with Title VII.  It did nothing to enforce its anti-harassment policy in its handbook.  There was no human resources department to which plaintiff could report Shuster's discrimination.  The discriminatory actions were done by a part owner of the company and the one who was responsible for providing the employee handbook and its anti-discrimination policy.

As such, this court finds that punitive damages in the amount of $22,000 are appropriate to compensate plaintiff for defendant's misconduct.